484

CORNELIUS REARDON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 13, 1935.*

CORNELIUS REARDON, pro se.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Plaintiff herein has filed his claim for eighty-one (81) days legal services, in the amount of Four Thousand Fifty Dollars, ($4,050.00)—and the following expenses: Telephone Tolls, Ten Dollars ($10.00); Witness Fees to George Arundale, Twenty Dollars ($20.00); for services of Louis Johnson and Clarence Johnson in setting stakes for right-of-way, Fifteen Dollars ($15.00) *each,* making a total claim of Four Thousand One Hundred Ten Dollars ($4,110.00). The claim grows out of the removal of an old bridge across the Illinois River at Morris, Illinois, and the construction of a new bridge near that point, on State Route No. 47.

When the State was about ready to advertise for bids for the construction work, an injunction was granted by the Circuit Court of Grundy County, enjoining the Highway Department from letting a contract for the bridge in question. On January 21, 1933, a number of the business and professional men of the City of Morris attended a meeting of their local Chamber of Commerce for the purpose of working out plans to obtain a speedy construction of the new bridge. Plaintiff, on January 23, 1933, wrote a letter to the Attorney General, informing him of the meeting and the desires of the people of the community, as expressed at such meeting. Thereafter a number of communications were exchanged between plain-

tiff and the Attorney General's office, and plaintiff apparently took an active part, both in outside efforts and court procedure, to obtain a dissolution of the injunction, and to expedite the plans for the construction of the bridge in question.

In his complaint, plaintiff seeks an award for services in connection with said injunction suit and various condemnation suits that followed, on the theory of an original employment as an attorney by the Attorney General, based upon the letters and telegram received by plaintiff from the Attorney General. In his written brief and argument, plaintiff states that:

"Regardless of whether or not the correspondence between claimant and the office of the Attorney General amounted to a contract of employment, the State of Illinois, through the office of the Attorney General and through the Department of Highways, has received the benefit of my labor and expenditures."

In claimant's Exhibit "I" appears a letter from him to the Attorney General, dated January 18, 1933, as follows:

"I believe you will realize the importance of instituting condemnation proceedings through your office at a very early date, and if I can be of any further help to you locally, I am at your service."

In a letter dated January 23, 1933, claimant wrote as follows:

"A committee was appointed for the purpose of extending cooperation on the part of those assembled with the Highway Department and your office, but with no inclination on our part to dictate a course of procedure." * * *

"I am somewhat reluctant to press this matter to your attention at this time but the seriousness of the situation makes me feel justified in what I am doing."

In a letter from claimant to the Attorney General on February 11, 1933, appears the following:

"The writer was chosen as chairman of a committee to try to get some action on this matter and I am approached daily by some of those business men inquiring what progress is being made. * * *

"I trust, therefore, that you will pardon me for my persistency in this matter and I again offer my services to represent you in court in an effort to have the pending injunction suit dismissed which seems logically the first move to be made." * * *

The Attorney General replied to this letter under date of February 18, 1933, as follows:

"I appreciate your offer of services and should it be necessary I will be pleased to avail myself of your very kind offer."

From the examination of the record, there can be no doubt but that plaintiff rendered valuable service in helping end the difficulties surrounding the construction of the bridge in question, but it is also apparent that he entered into active participation in the matter as a local citizen of the community of Morris, just as did the other citizens who participated in the meeting of the Chamber of Commerce, about which plaintiff wrote to the Attorney General. The Attorney General's office apparently accepted plaintiff's proffer of local aid and cooperation in the spirit in which it was apparently offered, and every act taken by claimant was apparently in behalf of the citizens of Morris.

The Attorney General denies that claimant was ever employed by his office as an attorney for the State and the record fails to support claimant's contention that he was so employed. Neither can any award be granted on the theory of an "Implied Contract." Plaintiff was apparently acting for the community in which he lived and in the interest of himself and his neighbors.

The claim therefore is hereby denied.